STATE ex rel COX, *Appellant,*

*v.*

WILSON, *Respondent.*

(No. 13863, CA 5046)

554 P2d 529

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*James M. Habberstad,* The Dalles, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

**FORT, J.**

This is an appeal by the Director of the Division of State Lands from a decree dismissing its suit to enjoin defendant from depositing any material in excess of 50 cubic yards in Five Mile Creek in Wasco County, Oregon.

The facts necessary to a decision, which are not seriously disputed, were found by the court, after hearing, as follows:

"1. That the source of Five Mile Creek is in the Mount Hood National Forest and that Five Mile Creek flows from the forest boundary in a generally northeasterly direction for a distance of approximately 16¼ to 18 miles to the mouth of Five Mile Creek where Five Mile Creek empties into Eight Mile Creek.

"2. That during some portions of the months of July, August, September, and October, Five Mile Creek is dry and completely devoid of water from the forest boundary downstream for the approximate distance of 4¾ to 5¾ miles.

"3. That during some portions of the months of July, August, September, and October, Five Mile Creek is dry and completely devoid of water from a point 1 to 1½ miles from the mouth of Five Mile Creek for an approximate distance of 5¼ to 5¾ miles upstream.

"4. That there are isolated sections between the mouth of Five Mile Creek and the forest boundary which flow throughout the year from springs which abut Five Mile Creek in these isolated sections. * * * These isolated sections of flow cover approximately 3 miles of the bed of Five Mile Creek.

"5. That some of the spring fed portions of Five Mile Creek mentioned in Paragraph 4, which flow year-round, are not capable of supporting a fish population during portions of the months of July, August, September, and October."

From these facts it concluded "that Five Mile Creek does not flow at all times throughout the year, but rather, this Court finds that Five Mile Creek flows on an intermittent basis throughout the year." Accord-

[ 889 ]

ingly, it dismissed the complaint. Additionally, we note that the defendant in his brief in the statement of facts adds "[t]hat the said Five Mile Creek supports aquatic life." In the absence of any definition of "aquatic life" in the statute or regulations, we take that term in the context of the statute to include living plant and animal life necessary for the maintenance and development of fish.

The problem presented is one of statutory construction, namely, the meaning of the term "constantly flowing streams" as used in ORS 541.605(8). It is agreed that the authority of the state to obtain the injunction sought is determined by the meaning of the term "constantly flowing streams" as used in ORS 541.605(8). ORS 541.605 to 541.695 provide for restrictions upon and regulation by plaintiff of either removal from or placing of material, in excess of described amounts, in the water resources of the state. ORS 541.610 sets forth the legislative policy in the adoption of the act as follows:

"(1) The protection, conservation and best use of the water resources of this state are matters of the utmost public concern. Streams, lakes and other bodies of water in this state, including not only water and materials for domestic, agricultural and industrial use but also habitats and spawning areas for game and food fish, avenues for transportation and sites for public recreation, are vital to the economy and well-being of this state and its people. Unregulated removal of material from the beds and banks of the waters of this state may create hazards to the health, safety and welfare of the people of this state. Unregulated filling in the waters of this state may result in interfering with or injuring public navigation, fishery and recreational uses of the waters. In order to provide for the best possible use of the water resources of this state, it is desirable to centralize authority in the Director of the Division of State Lands, and implement control of the removal of material from the beds and banks or filling of the waters of this state."

ORS 541.605(7) defines water resources:

" 'Water resources' includes not only water itself but

also aquatic life and habitats therein and all other natural resources in and under the waters of this state."

And ORS 541.605(8) provides:

" 'Waters of this state' means natural waterways including all tidal and nontidal bays, constantly flowing streams, lakes and other bodies of water in this state, navigable and nonnavigable, including that portion of the Pacific Ocean which is in the boundaries of this state."

Prior to 1971, ORS 541.605(6) and (7) defined the term "water resources" as:

"(6) 'Water resources' includes not only water itself but also aquatic life and habitats therein and all other natural resources in and under the waters of this state.

"(7) 'Waters of this state' means natural waterways including all tidal and nontidal bays, streams, lakes and other bodies of water in this state, navigable and nonnavigable, except the Pacific Ocean."

The question presented then is whether the 1971 amendment to the term "waters of this state" by the addition therein of the words "constantly flowing" eliminates Five Mile Creek from the provisions of ORS 541.605 to 541.695.

Pursuant to the authority to adopt regulations (ORS 273.045) the Administrator of the State Land Board adopted and promulgated rules relating to ORS 541.605 to 541.665 on January 30, 1974. In its definition section the rules define "Constantly Flowing Stream" as "any stream which flows during a portion of every year and supports aquatic life."

■ We give weight, in construing a statute, to the meaning given by an administrative agency to the words of a statute where the statutory language is unclear. *Kaiser Cement & Gypsum Corp. v. State Tax Comm.*, 250 Or 374, 443 P2d 233 (1968); *Beistel v. Pub. Emp. Relations Bd.*, 6 Or App 115, 486 P2d 1305 (1971).

■ Here the trial court in its decision noted that the statute "is capable of more than one meaning." When

[ 891 ]

the particular language in the statute is thus ambiguous we look to intrinsic aids such as the legislative history and the general policy enunciated in the act itself. *Murphy v. Nilsen,* 19 Or App 292, 527 P2d 736 (1974).

It is clear from the general policy of the Act stated in ORS 541.610(1) that one major purpose in its enactment was to regulate the water resources of the state to preserve and protect "habitats and spawning areas for game and food fish." As pointed out above it is not disputed that Five Mile Creek supports aquatic life. Thus it would appear on its face that Five Mile Creek was a stream which was within the policy intendment of the Act.

Because the 1971 legislature added the words "constantly flowing" to the earlier definition of water resources, the defendant contends and the trial court found that unless a stream flowed throughout the year it was not a constantly flowing stream within the statutory definition.

Our examination of the legislative history as set forth in the briefs leads us to a different conclusion. From the testimony on Senate Bill 224 (Oregon Laws 1971, ch 754), now ORS 541.610, we glean that the purpose of adding the words "constantly flowing" to the word "streams" was to eliminate from the application of the Act those "intermittent streams that have never had a fish in them," particularly those stream beds most frequently dry during the year but subject to occasional flash floods which cause a great deal of damage to agricultural land and are unrelated to aquatic life and the propagation and growth of fish. The Fish Commission and the Associated Oregon Industries representatives testifying before the committees agreed the exemption of such streams was desirable, and that the reach of the bill should be limited to waters related to fish and aquatic life. The committees of both houses accepted this concept and the amendment was made to reflect this.

■  From the summary of the facts set forth above, we conclude that the regulation, supra, defining constantly flowing streams was within the intention of the legislature. We also conclude that based upon the stipulated facts, Five Mile Creek is a constantly flowing stream subject to regulation under ORS 541.605 to 541.665. It follows that the judgment must be reversed and the case remanded for further proceedings.

Reversed and remanded.