Argued February 9, reversed March 31, 1977

## STATE ex rel COX, *Respondent,*
### *v.*
## WILSON, *Petitioner.*
### (CA 5046, SC 24821)
562 P2d 172

James M. Habberstad, of Dick & Dick, The Dalles, argued the cause and filed briefs for petitioner.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Denecke, Chief Justice, and Holman, Tongue, Bryson, Lent, Linde and Mengler, Justices.

DENECKE, C. J.

**DENECKE, C. J.**

The State, acting through the Director of the Division of State Lands, brought this suit to enjoin the defendant from filling a portion of Five Mile Creek without first obtaining a permit. The trial court dismissed the Division's complaint. The Court of Appeals reversed and held the defendant must secure a permit before filling the creek. 26 Or App 887, 554 P2d 529 (1976). We allowed the defendant's petition for review.

The issue is whether a rule adopted by the Division is authorized by ORS 541.605(8). The rule is an interpretive rule as defined by ORS 183.310. ORS 183.400(2) provides that the validity of such a rule may be tested in a proceeding of this type which seeks to enforce the rule.

In 1971 the Oregon Fish Commission and the Game Commission appeared before a Senate committee suggesting that the existing law prohibiting excavating material from the waters of the state without a permit be amended. They suggested it be amended by also prohibiting the filling of waters of the state without a permit. The legislature so amended ORS 541.615. It also amended the definitions section by adding the italicized words, " 'Waters of this state' means natural waterways including all tidal and nontidal bays, *constantly flowing* streams, lakes and other bodies of water in this state * * *." Oregon Laws 1971, ch 754, § 1, p 2103. ORS 541.605(8).

The Division adopted a rule which defined "constantly flowing stream" as "any stream which flows during a portion of every year and supports aquatic life."

Five Mile Creek runs through defendant's land in Wasco County, north central Oregon. It is dry between June or July and October. There are varying amounts of water in it during other parts of the year. Game fish spawn in it and inhabit it when there is water. Game

fish spawn and inhabit areas of Five Mile Creek above defendant's property in which there is always water. The trial court made no express findings on the issue but we read the testimony to support a finding that when there is water in the creek on defendant's property, it supports aquatic life and it does flow during a portion of the year.

The best standard for statutory construction applicable to the problems of this case is the often-quoted statement in *U. S. v. Amer. Trucking Ass'ns.,* 310 US 534, 542-544, 60 S Ct 1059, 84 L Ed 1345 (1940):

> "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation.

> "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' * * *." (Footnotes omitted.)

We have adopted this statement and standard. *Johnson v. Star Machinery Co.,* 270 Or 694, 704, 530 P2d 53 (1975); *Fox v. Galloway,* 174 Or 339, 346-347, 148 P2d 922 (1944).

The trial court was of the opinion that "these words are sufficient in and of themselves to determine the purpose of the legislation." *U. S. v. Amer. Trucking Ass'ns., supra* (310 US at 543). Using the dictionary as a guide, it concluded that a "constantly flowing stream" was one that flowed continuously and uninterrupted. The trial court stated a commonplace meaning of a "constantly flowing stream" would be one which does not go dry. Based upon these definitions, the trial court held the statute did not cover Five Mile Creek where it ran through defendant's land.

The Court of Appeals applied a different part of the standard stated in *U. S. v. Amer. Trucking Ass'ns., supra* (310 US 534), and held: "Our examination of the legislative history as set forth in the briefs leads us to a different conclusion." 26 Or App at 892. The Court of Appeals was of the opinion that from testimony before the Senate Committee on Fish and Game, a court could determine the purpose of adding "constantly flowing." It gleaned that the purpose was to eliminate those "intermittent streams that have never had a fish in them." 26 Or App at 892.

We are unable to conclude that the legislative history is so clear as to rebut the ordinary meaning of "constantly flowing stream."

The legislative history quite clearly shows that the representative of the Fish and Game Commissions desired the bill to require a permit for streams that, while not constantly flowing, did, at sometime, in some portions of the stream, produce salmon and steelhead. The members of the Senate committee and the Senate probably initially also had that intention. This is because the bill was amended and passed by the Senate with the italicized amendment, " 'Waters of this state' means natural waterways *capable of sustaining fish species* including all tidal and nontidal bays, streams, * * *." Engrossed SB 224, § 1(8)

The House, however, amended the Senate Bill to delete the italicized words. House Amendments to

Printed Engrossed Senate Bill 224. Conferees of both houses then met and amended the bill to add, "constantly flowing," modifying "streams." There is no further history which might explain these amendments.

The House action in deleting "capable of sustaining fish species" could be interpreted to express an intent to include all streams whether or not they were capable of sustaining fish species. There is no known reason, however, why they would have had such a purpose. The House's approval of the bill amended to contain the phrase, "constantly flowing," is certainly a limitation of some kind on the type of stream covered.

■ We conclude that the legislative history of the phrase, "constantly flowing," does not support the interpretation given that phrase in the Division's regulation. While, in light of that history, it may not distort the ordinary meaning[1] of "constantly flowing" to include streams that occasionally go dry under the conditions familiar in Oregon, the Division went too far when it included any stream which *flows* during any portion of the year.

We will not attempt to formulate a rule for the Division; that is its function. We hold that the rule adopted was unauthorized and, therefore, the Division cannot, on the authority of the adopted rule, require the defendant to obtain a permit.

Reversed.

---

[1] We use the phrase, "ordinary meaning," rather than "plain meaning," to indicate we are not "blessing" the "plain meaning rule" in its traditional form. Murphy, *Old Maxims Never Die: The "Plain-meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts,* 75 Colum L Rev 1299 (1975).