Argued and submitted September 8, defendant's conviction affirmed, but case remanded for sentencing November 24, 1981

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## GERALD ROBERT REAMS,
*Petitioner on Review.*

(No. 112,276, 113,303, CA 16280, SC 27303)

636 P2d 913

Paul J. De Muniz, Salem, argued the cause for petitioner on review. With him on the briefs was Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent on review. On the briefs were James M. Brown, Attorney General, Walter L. Barrie, Solicitor General, and Robert C. Cannon, Assistant Attorney General, Salem.

TONGUE, J.

Denecke, C. J., specially concurred and filed opinion in which Lent, J., joined.

## TONGUE, J.

Defendant was indicted for felony murder (ORS 163.115(1)(b)) for shooting the father of his estranged wife during the commission of the crime of burglary. He was also indicted for burglary in the first degree for unlawfully entering the home of his father-in-law with the intent to commit the crime of assault (ORS 164.225), as well as for intentional murder for the same killing (ORS 163.115).[1] Defendant was acquitted by the jury of intentional murder, but was convicted of felony murder and burglary.[2] He appealed from those convictions to the Court of Appeals, which affirmed them.

Defendant's petition for review was allowed by this court because of its concern whether a defendant can be properly indicted and convicted for felony murder when the underlying felony is a burglary in which the crime which defendant is alleged to have intended to commit after his unlawful entry was the crime of assault.

### The Facts

The defendant and his wife had a stormy marriage, during which his wife had previously left him for a time and he had attempted or threatened suicide. On April 18, 1979, defendant returned from work to find that the furniture of the house had been "cleaned out." Without telling the defendant, his wife had secretly rented another house and had arranged with a "mover" to move the furniture there. Defendant then called his father-in-law, Mr. Gibbons, and asked where he could find his wife. Mr. Gibbons said that he did not know.

Defendant then obtained a pistol from either his parents' home or his place of employment. After considering and rejecting suicide, he decided to try to find his wife. He then went to the home of his wife's parents,

---

[1] Defendant was first indicted for murder. After defendant gave notice of intent to rely upon the partial defense of "extreme emotional disturbance" (ORS 163.115(1)(a), (2) and ORS 163.135), he was then indicted for felony murder and for burglary. He was also indicted for attempted murder of the mother of his estranged wife and later pleaded guilty to that charge.

[2] The court submitted to the jury forms for verdicts of "guilty" and "not guilty" of the crime of intentional murder. The jury, however, did not fill out and return a verdict of either "guilty" or "not guilty" of that crime.

wearing a holster with the pistol. After ringing the doorbell, with no response, defendant opened the door with a key to the house which, according to Mrs. Gibbons, had been given to his wife, but which he was not authorized to use. After going into his wife's "old room," he went into Mr. Gibbons' room, took a second pistol from the night stand there, and waited for Mr. and Mrs. Gibbons to return.

Defendant testified that he did not intend to kill his wife, but to scare her with the guns and that when he entered the house he did not intend to kill Mr. Gibbons.

Mr. and Mrs. Gibbons returned, after visiting their daughter, while defendant was in the house. Defendant did not inform them that he was in the house, apparently hoping to learn why his wife had left him and where he might find her. Mrs. Gibbons went into the bedroom. Mr. Gibbons went into the living room, sat down on the davenport and began to read a newspaper.

Defendant then suddenly appeared and, without speaking a word, shot Mr. Gibbons in the back of the head with both pistols. He then turned and shot Mrs. Gibbons as she entered the room, wounding her.

Defendant next told Mrs. Gibbons that she must take him to his wife. When she said, "You want to kill her," he replied, "Well, after what I've done here, what difference does it make." He then took Mrs. Gibbons from the house and began walking toward his van. Eventually, Mrs. Gibbons escaped, the police arrived and arrested defendant.

From this testimony, the jury could properly find that when defendant unlawfully entered the house of Mr. and Mrs. Gibbons he did so with the intent to assault his wife, but not to either assault or kill either of her parents, and that there was evidence sufficient to find that defendant was guilty of burglary in the first degree, as well as felony murder, under the provisions of the statutes, which will next be discussed.

**The statutes: their legislative history, and previous Oregon court decisions.**

Burglary in the first degree is defined in ORS 164.215 and 164.225 to include unlawful entry into a

dwelling with intent "to commit a crime therein."[3] Assault is a crime. See ORS 163.160, 163.165, 163.175 and 163.185. The felony murder statute listing burglary as a felony which can support a conviction for first degree murder was first enacted in 1864 (Gen. Laws of Oregon 1845-1864, Crim. Code ch 43 § 502 (1866)). That crime is now defined by ORS 163.115 to include a person who:

> "* * * commits or attempts to commit arson in the first degree, *burglary in the first degree,* escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants; * * *." (Emphasis added)

*State v. Morris,* 241 Or 253, 405 P2d 369 (1965), involved facts somewhat similar to those in this case. Defendant went with a gun to the house where his estranged wife was living with one Libby. After firing a bullet through the front door and wounding his wife, defendant entered the home unlawfully by forcing his way in and then killed Libby. Defendant assigned as error a felony-murder instruction that if the killing of Libby occurred in the commission of the crime of burglary, proof of the burglary would be equal to proof of premeditation and deliberation necessary to constitute the crime of murder in the first degree. Defendant denied the burglary and contended that the instruction denied him the benefit of his theory of defense that the killing was an act of passion,

---

[3] ORS 164.225 provides in relevant part:

"(1) A person commits the crime of burglary in the first degree if he violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom he:

"(a) Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon; or

"(b) Causes or attempts to cause physical injury to any person; or

"(c) Uses or threatens to use a dangerous weapon."

ORS 164.215 provides in relevant part:

"(1) A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime therein."

without premeditation. This court rejected that contention, holding (at 255) that:

> "The jury was free to believe the defendant's story if it wanted to. If, however, it chose to believe the state's witnesses, there was ample evidence that a burglary was being committed. The burglary may have been incidental to the defendant's primary purpose, which was to kill his wife and her companion, but the state was not bound to ignore the burglary. The district attorney had the right to try to prove an objective fact, burglary, in addition to a subjective one, the state of the defendant's mind."[4]

The next year this court in *State v. Branch,* 244 Or 97, 415 P2d 766 (1966), again considered the propriety of a felony murder instruction, but under different facts. Thus, in *Branch* there was no burglary, as in *Morris,* and the conviction was not for first degree murder, as in *Morris.* Instead, defendant shot one Tommy Poole as Poole was getting out of an automobile parked alongside defendant's automobile several days after Poole had inflicted a beating upon defendant. Defendant admitted the shooting, but claimed self-defense. In holding that the giving of a felony murder instruction in such a case was error, this court recognized (at 99-100) that:

> "The purpose of the felony-murder rule is to relieve the state of the burden of proving premeditation or malice whenever the victim's death is caused by the killer while the killer is committing *another felony.* Since a malignant purpose is established by proof of the defendant's other felony, malice is redundant with reference to the killing." (Emphasis added)

but went on (at 100) to agree with holdings by other courts that:

> "* * * where the only felony committed (apart from the murder itself) was the assault upon the victim which resulted in the death of the victim, the assault merged with the killing and could not be relied upon by the state as an ingredient of a 'felony murder.' "

---

[4] Although in different terms, the burglary statutes at that time, 164.220 and 164.230, were substantially the same as the present burglary statutes, ORS 164.225 and 164.215 in their application to this case in that both statutes defined the crime of burglary to include the unlawful entry into a dwelling with an intent to commit any crime therein.

Although the opinions in *Branch* and *Morris* were both written by Justice Goodwin, *Morris* was not referred to in *Branch,* much less overruled.

This court has not, until this case, again considered either the propriety of felony murder instructions or the sufficiency of the evidence to support a conviction for felony murder in such cases. In 1971, however, the Court of Appeals, in *State v. Tremblay,* 4 Or App 512, 479 P2d 507, *rev den* (1971), considered the first of these questions under facts somewhat more similar to those of this case. Defendant, with her husband and another man, broke into the dwelling house of the victim. Following a fight with the victim, defendant's husband shot the victim with a gun which defendant had brought into the house. Defendant contended, as in this case, that she took a gun with her "only to scare" the victim. The trial court instructed that if the jury found that defendant or her accomplices caused the death while committing the crime of burglary in a dwelling, it was first degree murder. Defendant contended, as in this case, that the assault necessary to make up the burglary "merged" with the ultimate killing, citing *Branch.* The Court of Appeals rejected that contention, holding (at 517-19):

> "In *Branch* the only other crime was the assault itself. Burglary consists of two things - one, breaking and entering a dwelling house; two, intent to commit a crime therein. The crime which a burglar usually intends to commit after he breaks into a dwelling is larceny. Defendant concedes her argument could not apply in that situation. We think her argument fails because it is obvious that the legislature intended to give added protection to persons who are within a dwelling place. This is borne out by the decision in *State v. Morris,* 241 Or 253, 405 P2d 369 (1965), which was decided nine months before *State v. Branch,* supra. There the facts were almost in point with those in the case at bar.
> "* * * * *
>
> "If *Branch* was intended to overrule *Morris* we assume it would have done so specifically."

This was the state of the law in Oregon on this subject when the Criminal Law Revision Commission undertook to revise and recodify the criminal laws of this state. For many years the felony murder rule, as adopted by

statute in most states, had been subject to considerable criticism. See discussion in Comment, 13 Wake Forest L. Rev. 369, 370-376 (1977). The Commentary upon section 88 (murder) of the then Proposed Criminal Code, in recognition of such criticism, stated that:

"The draft section follows the modern trend away from the common law felony-murder rule pursuant to which almost any killing occurring during the commission of some other felony renders all participants in the underlying crime guilty also of murder. This has had some highly questionable results in cases where a co-felon had no idea that force would be used or where the death is that of a co-felon slain by police or the victim.

"* * * * *

"The proposed draft also erases the felony-murder provision found in ORS 163.020(1) which provides that death resulting from the commission of any felony, other than those described in the first degree murder statute, is second degree murder. Several other states presently have a provision similar to Oregon's, but all recent criminal codes have deleted it." Proposed Oregon Criminal Code, Final Draft and Report, July 1970, p. 87.

The same Commentary also makes the following observation:

"Pursuant to the definition in the section [murder] a person commits murder when he intentionally or knowingly kills another; * * * or when a person * * * *is killed in the course of the more violent and potentially dangerous felonies* — arson, burglary, rape, robbery, escape, kidnapping and forced sodomy." Proposed Oregon Criminal Code, Final Draft and Report, p. 85. (Emphasis added)

Thus, one of the effects of the felony murder provision of the new Criminal Code was to omit as collateral felonies crimes other than those considered to be "more violent and potentially dangerous." Burglary in the first degree, however, was considered to be such a felony. With respect to the legislature's decision to include burglary among "the more violent and potentially dangerous felonies," we must assume that the legislature, at the time of the addition of the new Criminal Code, was aware of the existing law in Oregon on this subject, as set forth in *Morris, Branch,* and *Tremblay,* all decided prior to the adoption of that Code (*See State v. Waterhouse,* 209 Or 424, 436, 307 P2d 327 (1957)).

It is to be noted that one of the consequences of felony murder is that an enhanced penalty is provided for deaths which occur during other violent crimes, one of which is burglary in the first degree. It is also to be noted that most of the other specifically enunciated crimes: kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree, are violent crimes where the victim either suffers a physical injury or there is a high probability of physical injury during their commission.

At legislative committee hearings on the then Proposed Criminal Code, one of the authors of the Code, Professor George M. Platt of the University of Oregon School of Law, stated to the legislators on the Interim Senate Committee that his listing of crimes in the felony murder rule "is somewhat arbitrary on his part * * * but this is a technical matter which can be handled by the staff later if the Commission agrees with the substance of the proposed draft."[5] The subcommittee, when asked, did not object to Professor Platt's listing. The listing was not challenged in the Senate Regular Session Criminal Law and Procedure Committee, the House Judiciary Committee, or in floor debate.[6]

Since ORS 163.115, 164.215 and 164.225 were adopted in 1971 as a part of the new Criminal Code, no bills have been submitted to change the law on this subject.

## The intention of the legislature in re-enacting the felony murder statute.

Defendant does not contend that any of his constitutional rights were violated by the decision of the Court of Appeals or by its reliance upon *Morris* and *Tremblay* in its interpretation of the felony murder and burglary statutes. Neither does the defendant contend that the terms of these statutes are ambiguous. Instead, defendant's primary contention is that these statutes should be construed by

---

[5] Proposed Revisions to the Oregon Criminal Code: Hearings on SB 40 Before Interim Comm. 1967-70 Criminal Law Revis. Comm'n. Subcommittee No. 2, 56th Legis. Sess. 2 (Nov. 14, 1969).

[6] *See* Proposed Revisions to the Oregon Criminal Code: Hearings on SB 40 Before the Senate Crim. Law and Proc. Comm., 56th Sess. (Regular 1971) (1969-71); and Before the House Judiciary Comm., 56th Sess. (Regular 1971) (1969-71).

this court in such a manner as to avoid what defendant considers to be an unreasonable result and in such a manner as to carry out the purpose of those statutes. The purpose, as stated by defendant, is to deter felons from killing negligently or accidentally in the course of the commission of felonies, rather than to deter those who intend to commit an assault or murder, thus making the felony murder rule "inappropriate" when "the underlying crime is a burglary in which the crime intended is an assault which ultimately results in a homicide." Defendant further contends that the legislature did not consider these problems, despite the legislative history of the 1971 Criminal Code, as previously discussed.

In the recent case of *Whipple v. Howser,* 291 Or 475, 632 P2d 782 (1981), this court (at 479-480) reaffirmed the following well-established rules:

"The starting point in every case involving a determination of legislative intent is the language of the statute itself. *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 US 322, 330 (1978). This need to look first to the language of the statute has been frequently recognized by this court. In *Swift & Co. and Armour & Co. v. Peterson,* 192 Or 97, 233 P2d 216 (1951), we said (at 108):

" 'The cardinal rule for the construction of a statute is to ascertain from the language thereof the intent of the lawmakers as to what purpose was to be served, or what object was designed to be attained.'

*"Accord, State of Oregon v. Buck,* 200 Or 87, 92, 262 P2d 495 (1953).

"More specifically, in *State ex rel Cox v. Wilson,* 277 Or 747, 562 P2d 172 (1977), we held (at 750) that:

" ' "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." Quoting *United States v. American Trucking Ass'ns,* 310 US 534, 542-44, 60 S Ct 1059, 84 LEd 1345 (1940).'

"As also held in *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 157, 364 P2d 627 (1960), quoting with approval from *Barrett v. Union Bridge Co.,* 117 Or 566, 570, 245 P 308, 45 ALR 527 (1926):

" ' * * * *we are not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it.'* (Emphasis added)"

■ Upon examination of the provisions of the felony murder statute (ORS 163.115(1)(b)) and the first degree burglary statutes (ORS 164.225 and 164.215), we believe that the intention of the legislature in the adoption of these statutes in 1971 is expressed by the clear and unambiguous terms of these statutes to the effect that a person who commits burglary in the first degree and who in the course of that crime causes the death of another person not a participant in the crime, as in this case, is guilty of criminal homicide (i.e., felony murder) and that a person who, as in this case, enters a dwelling unlawfully with a gun with the intent to commit an assault on some person who may be in that house is guilty of burglary in the first degree. It follows, in our opinion, that this court is not at liberty to consider what the legislature might have intended or provided on the assumption that it did not consider the problems now raised by this defendant, much less to construe the terms of this statute so as to avoid problems which it may or may not have considered at the time of its adoption of these statutes in 1971.

Even if the decision to include the felonies of "arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree" as the collateral felonies for purposes of the felony murder statute was an "arbitrary" decision, the legislative intention to include each of these crimes is clear.

A distinction was made by the legislature between conviction for a felony murder of a defendant who kills a person in a dwelling after unlawfully entering the dwelling with an intent to commit the crime of assault, as in this case, and the conviction of a defendant for second degree murder for killing a person not in a dwelling, but in the street, in the course of an assault, as in *Branch*. In that respect, we agree with the holding by the New York Court of Appeals in *People v. Miller*, 32 NY 2d 157, 297 NE 2d 85 (1973), in which that court held (at 160-161):

> "It should be apparent that the Legislature, in including burglary as one of the enumerated felonies as a basis for felony murder, recognized that persons within domiciles are in greater peril from those entering the

domicile with criminal intent, than persons on the street who are being subjected to the same criminal intent. Thus, the burglary statutes prescribe greater punishment for a criminal act committed within the domicile than for the same act committed on the street. Where, as here, the criminal act underlying the burglary is an assault with a dangerous weapon, the likelihood that the assault will culminate in a homicide is significantly increased by the situs of the assault. When the assault takes place within the domicile, the victim may be more likely to resist the assault; the victim is also less likely to be able to avoid the consequences of the assault, since his paths of retreat and escape may be barred or severely restricted by furniture, walls and other obstructions incidental to buildings. Further, it is also more likely that when the assault occurs in the victim's domicile, there will be present family or close friends who will come to the victim's aid and be killed. Since the purpose of the felony-murder statute is to reduce the disproportionate number of accidental homicides which occur during the commission of the enumerated predicate felonies by punishing the party responsible for the homicide not merely for manslaughter, but for murder (see Model Penal Code, Tent. Draft No. 9, pp. 37, 38), the Legislature, in enacting the burglary and felony-murder statutes, did not exclude from the definition of burglary, a burglary based upon the intent to assault, but intended that the definition be 'satisfied if the intruder's intent, existing at the time of the unlawful entry or remaining, is to commit *any* crime.' "

To the same general effect, *see Blango v. United States,* 373 A2d 885, 887-889 (DC App 1977); *State v. Foy,* 224 Kan 558, 565-567, 582 P2d 281 (1978); and *State v. Miller,* 110 Ariz 489, 490, 491, 520 P2d 1113 (1974). *See also* Comment, 13 Wake Forest L. Rev. 369, 388-394 (1977). *See generally* Anno., 40 ALR 3d 1341 (1971).

The only case cited by defendant as holding to the contrary is *People v. Wilson,* 1 Cal 3d 431, 82 Cal Rptr 494, 462 P2d 22 (1969). In *Wilson,* defendant was charged with felony murder in the killing of his wife, as well as in the killing of another person present in her home. In reversing both convictions, the California court was critical (at p. 28) of the felony murder rule as "a highly artificial concept which deserves no extension beyond its required application"; that its purpose was to deter felons from killing

negligently or accidentally by holding them strictly responsible for killings they commit; that the rule serves that purpose only when applied to a felony independent of homicide, and that the only distinction between a first degree felony murder based upon the felony of burglary and a second degree felony murder based upon assaulting another with a deadly weapon is that the assault took place inside a dwelling. In rejecting that distinction, the court held (at 29) that although the first degree felony murder rule is statutory, "the statutory source of the rule does not compel us to apply it in disregard of logic and reason."

■ ■   Although recognizing that the opinion in *Wilson* may have some "logic" in its application to the statutes of California, we do not believe that such "logic" can properly be applied to the Oregon felony murder and burglary statutes. First, as previously stated, the established rule of this court requires that we must honor the terms of this statute as the best evidence of the intention of the legislature and cannot properly undertake to arrive at an interpretation of this statute in accord with our ideas of "logic and reason." Next, there is no evidence that the sole intended purpose of the Oregon legislature in the enactment of these statutes was to "deter felons from negligent or accidental killings." Finally, even though extreme hypothetical cases may be conjured in which it would appear to be "illogical" to convict a person for felony murder for a killing inside a dwelling house after a burglary by entering the house with an intent to assault, but not for a killing outside such a dwelling following an intent to assault, we cannot say that it would have been so unreasonable for the legislature to make such a distinction for the reasons as stated by the New York court in *Miller* as to require this court to construe these statutes in a manner contrary to their clear and unambiguous terms.

Defendant next contends that this court should not look to "labels," but to the facts of each case, including the facts of this case. It should thus also be noted that the facts of this case differ from those in *Wilson* in that in this case, as previously noted, the jury could have properly found that upon unlawfully entering the home of Mr. and Mrs. Gibbons, defendant intended to assault his wife, but did not intend to assault them. Thus, the jury could have properly

found that the person killed in this case (Mr. Gibbons) was not the same person as the person intended to be the subject of the assault upon defendant's unlawful entry of the house. It follows that the facts of this case are consistent with what defendant (and *Wilson*) contend to be the purpose of the felony murder rule, i.e., to deter felons from killings of third persons in the course of the commission of other "independent" felonies involving other persons.

In also considering "the facts of each case," we note that our previous decision in *State v. Branch, supra,* did not involve a first degree felony murder based upon a killing during the course of a burglary, as in this case and as in the Oregon cases of *State v. Morris, supra,* and *State v. Tremblay, supra.* Instead, the defendant in *Branch* was convicted of second degree murder after assaulting and shooting the decedent in the street beside defendant's automobile.

Thus, the killing of Mr. Gibbons in this case was not an "integral part" or "ingredient" of the collateral felony of burglary, which the jury could have found to involve an intent to assault defendant's wife, at least in the same sense as the killing in *Wilson* and *Branch.* In other words, this is not a case in which the collateral felony (the burglary) was one in which the intended crime at the time of the burglary was an intended assault upon the same person who was killed during the course of the burglary, as in *Wilson.* Neither is this a case in which the collateral felony was not burglary, but assault, and an assault upon the same person who was killed during the commission of that crime, as in *Branch.* Indeed, as pointed out in *Branch* (244 Or at 100), a felony murder instruction was properly given in *State v. Reyes,* 209 Or 559, 308 P2d 183 (1957), which involved an assault upon a police officer, during the course of which a citizen who attempted to help the officer was killed.[7]

Defendant also expresses concern that under the felony murder rule a prosecuting attorney may use that theory to "bootstrap" and "as a means to avoid the obvious *mens rea* problem" resulting from defendant's partial

---

[7] We recognize, however, that in *Tremblay* the Court of Appeals held that a felony murder instruction was proper despite the fact that the person killed was also the subject of the intended assault at the time of the burglary in that case.

defense of extreme emotional disturbance in an attempt to reduce the conviction to one for manslaughter and thus reduce the "efficacy" of that partial defense. This may be so, but it does not, in our opinion, authorize this court to construe those statutes contrary to what we believe to be required by their terms in order to prevent such a possible result.

Finally, defendant calls our attention to the provisions of the 1971 Criminal Code set forth in ORS 161.025(2) and 161.025(1)(d) as follows:

"The rule that a penal statute is to be strictly construed shall not apply to Chapter 743, Oregon Laws 1971, or any of its provisions. Chapter 743, Oregon Laws 1971, shall be construed according to the fair import of its terms, to promote justice and to effect the purposes of subsection (1) of this section." (ORS 161.025(2)).

The general purposes of Chapter 743, Oregon Laws 1971, are:

"To define the act or omission and the accompanying mental state that constitute each offense and limit the condemnation of conduct when it is without fault." (ORS 161.025(1)(d)).

In our best judgment, neither of these statutory provisions can properly authorize this court to construe provisions of the 1971 Criminal Code to reach a result contrary to what this court believes to have been the intention of the legislature as expressed by the terms of that statute.

■ For these reasons, we affirm the decision by the Court of Appeals in holding that defendant was properly convicted of the crime of felony murder pursuant to the provisions of ORS 163.115.

**The sentence imposed upon defendant was "disproportionate."**

■ A second reason why this court allowed defendant's petition for review in this case was to consider whether the decision by the Court of Appeals was correct in holding that defendant's sentence for life for felony murder, with the requirement that defendant serve not less than 25 years before becoming eligible for parole, under the provisions of ORS 163.115(5) (which was enacted as a part of the death

penalty statute as an initiative measure) was invalid, as contended by defendant, upon the ground that the provision for such a mandatory sentence for murder was in conflict with the provisions of ORS 163.095, which provides for minimum sentences of 20 years for certain "aggravated" intentional murders.[8]

---

[8] ORS 163.115(5) provides:

"Except when a sentence of death is imposed pursuant to ORS 163.116, a person convicted of murder shall be punished by imprisonment for life and shall be required to serve not less than 25 years before becoming eligible for parole."

ORS 163.095 provides:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"(1)(a) The defendant committed the murder pursuant to an agreement that he receive money or other thing of value for committing the murder.

"(b) The defendant solicited another to commit the murder and paid or agreed to pay the person money or other thing of value for committing the murder.

"(c) The defendant committed murder after having been convicted of murder as defined in ORS 163.115.

"(d) The defendant committed murder by means of bombing.

"(2)(a) The victim was one of the following and the murder was related to the performance of the victim's official duties in the justice system:

"(A) A police officer as defined in subsection (5) of ORS 181.610;

"(B) A correctional, parole or probation officer or other person charged with the duty of custody, control or supervision of convicted persons;

"(C) A member of the Oregon State Police;

"(D) A judicial officer as defined in ORS 1.210;

"(E) A juror or witness in a criminal proceeding;

"(F) An employe or officer of a court of justice; or

"(G) A member of the State Board of Parole.

"(b) The defendant was confined in a state, county or municipal penal or correctional facility or was otherwise in custody when the murder occurred.

"(c) There was more than one murder victim.

"(d) The defendant personally committed the homicide in the course or in the furtherance of the crime of robbery in any degree, kidnapping or arson in the first degree, any sexual offense specified in this chapter, or in immediate flight therefrom.

"(e) The defendant committed murder after having been convicted of manslaughter as defined in ORS 163.118."

This court, in *State v. Shumway,* 291 Or 153, 630 P2d 796 (1981), held that such a sentence of life for "murder" under ORS 163.115(5) was invalid as a "disproportionate" sentence in view of the provisions of ORS 163.105 under which a minimum sentence of 20 or 30 years, without parole, were provided for various "aggravated" intentional murders. At the time of oral argument in this case, the Assistant Attorney General representing the State of Oregon conceded on behalf of the state that in view of the decision by this court in *Shumway* such a sentence for felony murder was invalid and that this case must be remanded to the trial court for the resentencing of this defendant on that charge under the rules as stated in *State v. Segner,* 42 Or App 397, 600 P2d 916 *rev den* (1979).[9] We agree.

At the time of such resentencing, the trial court should also state the reasons not only for that sentence, but

---

[9] In *Segner* the Court of Appeals noted that:
"ORS 144.110(1) provides that:
" 'In *any felony* case, the court may impose a minimum term of imprisonment of up to one-half of the sentence it imposes.' (Emphasis added.)
"ORS 161.525 provides that a crime is a felony:
" '* * * [I]f it is so designated in any statute of this state or if a person convicted under a statute of this state may be sentenced to a maximum term of imprisonment of more than one year.'
"Murder is not expressly designated as a felony by statute. However, since a sentence of life imprisonment contemplates incarceration for more than one year, the punishment provision of ORS 163.115 placed murder squarely within the ORS 161.525 definition of felony. Thus, the trial court had the same discretion to invoke the enhanced sentence provision of ORS 144.110(1) for a murder conviction as it would in any other felony case.
"* * * * *
"Although the statutes did not formerly expressly provide for a minimum term of imprisonment for a defendant sentenced to life imprisonment, Class A Felonies allow a minimum term of imprisonment up to ten years. ORS 161.605. For aggravated murder, ORS 163.105 authorizes 20 and 30 year mandatory minimum sentences. Therefore, it follows from the statutory scheme of penalties that a minimum sentence imposed for a lesser crime is permissible within the limitations prescribed by ORS 144.110(1). Any other interpretation of ORS 144.110(1) would lead to the incongruous result that a felon who stops short of killing his victim would potentially be subject to more lengthy imprisonment than one who actually kills the victim. Moreover, the ten-year minimum sentence imposed herein is significantly less than the 20 and 30 year minimum sentences provided for aggravated murder under ORS 163.105. Under the facts of this case, we hold that the circuit court was within its authority in imposing the minimum ten-year sentence."

also for the sentence to be imposed upon defendant for the attempted murder of Mrs. Gibbons, as held by the Court of Appeals and as required by the decision of this court in *State v. Garcia,* 288 Or 413, 432, 605 P2d 671 (1980), which was also decided after the sentencing by the trial court of this defendant.[10]

The conviction of the defendant is affirmed, and the case is remanded for sentencing.

**DENECKE, C. J.,** specially concurring.

I concur in the majority decision that the defendant was lawfully convicted of felony murder but that the defendant must be resentenced. I write specially for the reason that I am of the opinion that the defendant can be found guilty of felony murder because when the defendant entered he intended to assault A, his wife, and subsequently he killed B, his father-in-law. I express no opinion whether the defendant could be found guilty of felony murder if he entered intending to assault A and he subsequently killed A.

Lent, J., joins in this specially concurring opinion.

---

[10] Defendant also assigned as errors on appeal various other rulings by the trial court. We have examined each of these assignments of error in appellant's brief to the Court of Appeals. We believe that the Court of Appeals correctly disposed of all of those assignments of error by its opinion in this case.