Argued and submitted August 14, 1981, reversed and remanded with
instructions to dismiss February 22, reconsideration denied April 1,
petition for review allowed May 4, 1982 (292 Or 103)

# OCHOCO CONSTRUCTION, INC.,
*Petitioner,*

*v.*

# DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT et al,
*Respondents.*

(No. 80-031, CA A20450)

641 P2d 49

Douglas Fowler, Portland, argued the cause for petitioner. On the brief was Diane W. Spies, Portland.

Mary J. Diets, Assistant Attorney General, Salem, argued the cause for respondent Department of Land Conservation and Development. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Gary S. Thompson, District Attorney, Prineville, waived appearance for respondent Crook County Board of Commissioners.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner, Ochoco Construction, Inc. (Ochoco), appeals from an order of the Land Use Board of Appeals (LUBA) that remanded to the Crook County Court, the County's governing body, a decision granting preliminary plat approval for "Cascade Village," a 200 lot subdivision on 433 acres in Crook County. Ochoco argues: 1) the Department of Land Conservation and Development (Department) does not have the authority to represent the State of Oregon in actions brought before LUBA contesting local government decisions which are made under such governments' acknowledged comprehensive plans; 2) that the Department did not allege sufficient aggrievement for either itself or the State of Oregon to attain standing to appeal to LUBA; and 3) the findings and conclusions of the Crook County Court were sufficient to demonstrate compliance with the acknowledged Crook County-Prineville Area Comprehensive Plan (the Crook County Plan) and the Crook County Zoning Ordinance of 1978. We reverse and remand.

On February 16, 1979, the Land Conservation and Development Commission (LCDC) acknowledged the Crook County Comprehensive Plan and implementing ordinances to be in compliance with the statewide planning goals, as required by ORS 197.010(3). On August 12, 1980, the Crook County Court issued a decision and order granting preliminary plat approval for Cascade Village. The court concluded that the proposed subdivision was in compliance with the acknowledged comprehensive plan and all applicable ordinances and laws.

The Department had appeared before the Crook County Planning Commission and the Crook County Court in opposition to approval of the subdivision. By an amended petition for review dated November 10, 1980, the Department appealed the decision of the Crook County Court to LUBA. In that petition, it claimed that approval of the subdivision was inconsistent with and in violation of the acknowledged comprehensive plan, that such approval adversely affected coordinated, statewide land conservation and development and that it was adversely affected and aggrieved because the subdivision injures the statewide

planning scheme that it is statutorily charged with enforcing.

LUBA found that the Department had standing to challenge the county's decision and, further, that the court's decision approving the preliminary plat for Cascade Village contained insufficient findings and conclusions to demonstrate compliance with the county's comprehensive plan and its zoning and subdivision ordinances. LUBA remanded the matter to the Crook County Court for further proceedings consistent with its opinion. This judicial review proceeding followed.

## STATUTORY SCHEME

The general policies underlying land use regulation in Oregon are set out in ORS 197.005.[1] The Land Conservation and Development Commission, established by ORS 197.030,[2] is the statewide land use planning body

---

[1] ORS 197.005 (since amended, Or Laws 1981, ch 748, § 21) provides:

"The Legislative Assembly finds that:

"(1) Uncoordinated use of lands within this state threatens the orderly development, the environment of this state and the health, safety, order, convenience, prosperity and welfare of the people of this state.

"(2) To promote coordinated administration of land uses consistent with comprehensive plans adopted throughout the state, it is necessary to establish a process for the review of state agency, city, county and special district land conservation and development plans for compliance with state-wide planning goals.

"(3) Except as otherwise provided in subsection (4) of this section, cities and counties should remain as the agencies to consider, promote and manage the local aspects of land conservation and development for the best interests of the people within their jurisdictions.

"(4) The promotion of coordinated state-wide land conservation and development requires the creation of a state-wide planning agency to prescribe planning goals and objectives to be applied by state agencies, cities, counties and special districts throughout the state.

"(5) The impact of proposed development projects, constituting activities of state-wide significance upon the public health, safety and welfare, requires a system of permits reviewed by a state-wide agency to carry out state regulations prescribed for application for activities of state-wide significance throughout this state."

Unless noted, amendments made in 1981 to statutory provisions cited herein are not relevant to this case. In addition, because this appeal is governed by the laws in effect prior to the 1981 legislative session, we refer in the text to statutory provisions as they were codified in 1979.

[2] Amended by Or Laws 1981, ch 545, § 4.

in Oregon. It consists of seven members appointed by the Governor. LCDC's duties are delineated in ORS 197.040.[3] ORS 197.045[4] lists its powers; it provides, in pertinent part:

"The commission may:

"* * * * *

"(4) Perform other functions required to carry out ORS 197.005 to 197.430 * * * .

"* * * * *."

ORS 197.075 establishes the Department, which is comprised of a director, the members of LCDC, and subordinate officers and employes. The director of the Department is appointed by the commission and holds office at the pleasure of the commission. LCDC also fixes the director's salary. ORS 197.085. The director is instructed to:

"(1)   Be the administrative head of the department.

"(2)   Coordinate the activities of the department in its land conservation and development functions with such functions of federal agencies, other state agencies, cities, counties and special districts.

"(3)   Appoint, reappoint, assign and reassign all subordinate officers and employes of the department, prescribe

---

[3] ORS 197.040 (amended by Or Laws 1981, ch 748, § 22) provides, in pertinent part:

"(1) The commission shall:

"(a) Direct the performance by the director and his staff of their functions under ORS 197.005 to 197.430 * * * .

"* * * * *

"(2) Pursuant to ORS 197.005 to 197.430 * * * , the commission shall:

"(a) Establish state-wide planning goals consistent with regional, county and city concerns;

"(b) Issue permits for activities of state-wide significance;

"* * * * *

"(f) Coordinate planning efforts of state agencies to assure conformance with state-wide planning goals and compatibility with city and county comprehensive plans;

"* * * * *

"(h) Review and recommend to the Legislative Assembly the designation of areas of critical state concern; [and]

"* * * * *

"(j) Perform other duties required by law."

[4] Amended by Or Laws 1981, ch 748, § 22a.

their duties and fix their compensation, subject to the State Merit System Law.

"(4) Represent this state before any agency of this state, any other state or the United States with respect to land conservation and development within this state.

"* * * * *." ORS 197.090.[5]

The Department and LCDC are also responsible respectively for preparing and adopting statewide land use planning goals and guidelines pursuant to ORS 197.225.[6]

The role to be played by cities and counties in land use planning is delineated in ORS 197.175(2),[7] which states:

"Pursuant to ORS 197.005 to 197.430 and 469.350, each city and county in this state shall:

"(a) Prepare and adopt comprehensive plans consistent with state-wide planning goals approved by the commission; and

"(b) Enact zoning, subdivision and other ordinances or regulations to implement their comprehensive plans."[8]

ORS 197.250[9] requires that:

"* * * [A]ll comprehensive plans and any zoning, subdivision and other ordinances and regulations adopted by a city or county to carry out such plans and all plans, programs or regulations affecting land use adopted by a state agency or special district shall be in conformity with the state-wide planning goals within one year from the date such goals are approved by the commission."

Former ORS 197.400,[10] in effect at the pertinent times, authorized LCDC to designate certain instances of

---

[5] Amended by Or Laws 1981, ch 748, § 21d.

[6] Amended by Or Laws 1981, ch 748, § 27a.

[7] Amended by Or Laws 1981, ch 748, § 15.

[8] ORS 197.175(2) has now been amended (Or Laws 1981, ch 748, § 15) to add two subsections, one of which, subsection (d), provides that cities and counties shall,

"If [their] comprehensive plan and land use regulations have been acknowledged by the commission, make land use decisions in compliance with the acknowledged plan and land use regulations."

The parties have not urged that this amendment has any bearing on the present controversy. We express no opinions as to any limiting effect it may have on the decision we render today.

[9] Amended by Or Laws 1981, ch 748, § 29a.

[10] Repealed by Or Laws 1981, ch 748, § 56.

planning and siting of public transportation facilities, sewage systems, water supply systems, solid waste disposal systems and public schools as "activities of statewide significance." LCDC could also recommend that other matters be designated as having statewide significance.[11] *See* ORS 197.405.[12] Persons and public agencies who wished to undertake an activity of statewide significance were required to obtain a planning and siting permit issued by LCDC. *See* former ORS 197.415 through 197.430.[13]

The Land Use Board of Appeals (LUBA) was established by Oregon Laws 1979, chapter 772, section 2. Section 4(1)[14] of that chapter requires that a review by LUBA be initiated by a notice of intent to appeal. Sections 4(2) and 4(3) designate who may appeal to LUBA:

"(2) Except as provided in subsection (3) of this section, *any person whose interests are adversely affected or who is aggrieved by a land use decision and who has filed a notice of intent to appeal* as provided in subsection (4) of this section may petition the board for review of that decision or may, within a reasonable time after a petition for review of that decision has been filed with the board, intervene in and be made a party to any review proceeding pending before the board.

"(3) *Any person who has filed a notice of intent to appeal* as provided in subsection (4) of this section *may petition* the board for review of a quasi-judicial land use decision *if the person:*

"(a) *Appeared* before the city, county or special district governing body or state agency orally or in writing; *and*

"(b) *Was a person* entitled as of right to notice and hearing prior to the decision to be reviewed or was a person *whose interests are adversely affected or who was aggrieved* by the decision." (Emphasis supplied.)

---

[11] No party suggests such a matter is involved here.

[12] Amended by Or Laws 1981, ch 748, § 12.

[13] ORS 197.415, 197.420 and 197.425 were repealed by the legislature in 1981. Or Laws 1981, ch 748, § 56. ORS 197.430 was amended by Or Laws 1981, ch 748, § 14.

[14] Oregon Laws 1979, chapter 772, section 4 was reenacted, as amended, by Or Laws 1981, ch 748, § 35. Because this case is governed by the law in effect in 1980, we will refer to relevant provisions that were left uncodified in 1979 in their then uncodified form. 1981 reenactments and amendments are noted in footnotes.

"Person" was defined in section 3(2) as "* * * any individual, partnership, corporation, association, governmental subdivision or agency or public or private organization of any kind."[15] "Land use decision" was defined in section 3(1) as including:

"(a)    A final decision or determination made by a city, county or special district governing body *that concerns the* adoption, amendment or application of:

"(A)    *The state-wide planning goals;*

"(B)    A comprehensive plan provision; or

"(C)    A zoning, subdivision or other ordinance that implements a comprehensive plan; * * *" (Emphasis supplied.)[16]

Section 4(7) deals with the scope of review by LUBA:[17]

"* * * The board shall be bound by any finding of fact of the city, county or special district governing body or state agency for which there is substantial evidence in the whole record."

Section 5(4)[18] authorizes LUBA to reverse or remand a local land use decision only if LUBA finds that the city, county or special district governing body:

"(a)    * * * * *

"(A)    Exceeded its jurisdiction;

"(B)    Failed to follow the procedure applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner;

"(C)    Made a decision that was not supported by substantial evidence in the whole record;

"(D)    Improperly construed the applicable law; or

"(E)    Made a decision that was unconstitutional; or

"(b)    After review in the manner provided in section 6 of this 1979 Act, the commission has determined that the city, county or special district governing body or state agency violated the state-wide planning goals."

---

[15] Oregon Laws 1979, chapter 772, section 3 was repealed by Or Laws 1981, ch 748, § 56. The same definition of "person" is now codified in ORS 197.015(14). Or Laws 1981, ch 748, § 1.

[16] An amended definition of "land use decision" is now codified in ORS 197.015(10). Or Laws 1981, ch 748, § 1.

[17] *See* n 14, *supra.*

[18] Oregon Laws 1979, chapter 772, section 5 was reenacted, as amended, by Or Laws 1981, ch 748, § 36.

It is against this statutory background that we examine Ochoco's challenge to the Department's authority to contest local land use decisions before LUBA.

## AUTHORITY OF THE DEPARTMENT

■ The Department argues that it has statutory authority to contest decisions made by local governments based upon acknowledged comprehensive plans. We do not agree. A state agency is "a creature of statute whose authority extends as far as the statutes extend, and no further." *Board of Comm. of Clackamas County v. LCDC,* 35 Or App 725, 732, 582 P2d 59 (1978); *Hawkins v. Board of Medical Examiners,* 23 Or App 320, 322, 542 P2d 152 (1975). In construing statutes, it is this court's task to give effect to the intent of the legislature. *Rivers v. SAIF,* 45 Or App 1105, 1108, 610 P2d 288 (1980). The most persuasive evidence of that intent is the words of the statutes themselves. *Rivers v. SAIF, supra,* 45 Or App at 1108; *State ex rel Cox v. Wilson,* 277 Or 747, 750, 562 P2d 172 (1977). With those strictures in mind, we turn to a more specific examination of the statutory scheme.

The preamble to ORS chapter 197 states:

"Except as otherwise provided * * * cities and counties should remain as the agencies to consider, promote and manage the local aspects of land conservation and development for the best interests of the people within their jurisdictions." ORS 197.005(3).

The sole exception to this mandate for local autonomy and control is found in ORS 197.005(4):

"The promotion of coordinated state-wide land conservation and development requires the creation of a statewide planning agency to prescribe planning goals and objectives to be applied by state agencies, cities, counties and special districts throughout the state."

That is, land use decisions are to be made on a local level, subject only to the duties expressly delegated to the statewide planning agency.

We begin, therefore, with the premise that the legislature intended local governments to perform the local aspects of land use planning in this state. The Department's role is an exception to the general rule. Because it is an exception, it is limited to the duties and powers

expressly or by necessary implication vested in the Department by the legislature. *See Morrison v. School Dist. No. 48, Wash. Co.,* 53 Or App 148, 152, 631 P2d 784, 788 (1981).

The Department is composed of LCDC, a director and subordinate officers and employes. ORS 197.075. The director's duties, set out in ORS 197.090, *supra,* include representing the state "before any agency of this state, any other state or the United States with respect to land conservation and development within this state," and providing clerical and support services to LUBA.

LCDC's main planning duties are to establish statewide planning goals, to review local comprehensive plans for conformance with statewide planning goals and to consider goal issues arising out of cases before LUBA. ORS 197.040; Or Laws 1979, ch 772, § 6. Cities and counties are required to prepare and adopt comprehensive plans consistent with the statewide planning goals adopted by LCDC and to enact zoning, subdivision and other ordinances or regulations to implement their comprehensive plans. ORS 197.175. The statutory scheme authorizes LCDC to examine and approve or disapprove those plans on the basis of the statewide goals and guidelines the Department itself is authorized to formulate. The Department's discretion in formulating those statewide goals and LCDC's discretion in determining whether local plans are acceptable is very broad.

Our view is reinforced by what authority we find the legislature *did* give the Department (acting through LCDC) concerning land use problems which were not resolved by the comprehensive plan process. This was the authority, established in former ORS 197.400, to designate "activities of state-wide significance." These activities were limited to public transportation, sewage, water supply, solid waste and public school matters. LCDC could also identify other such areas of concern, but actual designation of the area required a *legislative enactment.* ORS 197.405(5).[19] The 1981 amendments to the statutes take the latter approach. *See, generally,* Or Laws 1981, ch 748, §§ 12 through 14. If the Department has the authority it claims

---

[19] Recodified as ORS 197.405(4). Or Laws 1981, ch 748, § 12.

in the present case, its need for the authority in ORS 197.405 substantially dissipates, if it does not vanish entirely.

The roles to be played by the Department, its director, and LCDC are clearly and concisely stated in the statutes. Those statutes do not expressly authorize the Department to contest land use decisions made by local governments *after* LCDC has acknowledged those governments' comprehensive plans. Neither do we think the authority may be implied. In light of the legislature's expressed preference for local management of land use planning and its circumscribed grants of authority to the Department and LCDC, we think that if the legislature had intended to convey such a significant power to the Department, it would have specifically expressed its intent to do so.[20] *See Board of Comm. of Clackamas County v. LCDC, supra,* 35 Or App at 730, 731.

The Department points to Oregon Laws 1979, chapter 772, section 4(3), set out *supra* at 5-6, which designates those individuals and entities that may petition for review to LUBA. That chapter authorizes such an appeal by "any person" who files a notice of appeal and 1) appeared before the city or county governing body and 2) was entitled to notice and hearing prior to the decision or was a person whose interests are adversely affected or who was aggrieved by the decision. "Person" is defined to include a state agency. From this, the Department argues that the legislature intended to authorize the Department, when adversely affected or aggrieved, to file petitions with LUBA.

_____

[20] For instance, the legislature clearly stated its intent to authorize both counties and the state to bring civil actions enjoining persons and agencies that fail to obtain permits for activities of statewide significance. *See* former ORS 197.410(3), which has been amended by Or Laws 1981, ch 748, § 13(2). Had it also intended to authorize the Department to appeal local land use decisions, it could have expressed that intent with equal clarity. Moreover, the 1981 legislature expressly authorized the Department's director to appeal to LCDC a local government decision to adopt an amendment to an acknowledged comprehensive plan or land use regulation or a new land use regulation so long as the Department "participated either orally or in writing in the local government proceedings leading to the final opinion." *See* Or Laws 1981, ch 748, § 5a (2). The absence of an express authorization in 1979 for Department appeals of local land use decisions strongly suggests that the 1979 legislature did not intend to grant such authority.

The statutes dealing with standing to *appeal to LUBA* are of no help in determining whether the Department has authority to contest local land use decisions *initially*. The Department may be "aggrieved" in the abstract sense that it would have wished that a particular land use decision had been different. However, its authority to appear before LUBA depends on its authority to appear before a local governing body in the first place. That authority, if it exists, must be found in the Department's own organic statute, and we do not find it there. Oregon Laws 1979, chapter 772, section 4(3), does not help the Department here.

The Department also argues that we should find a legislative intent to authorize it to contest local decisions in LCDC's general authority to "perform other functions required to carry out ORS 197.005 to 197.430" and from the director's authority to "[r]epresent this state before any agency of this state, any other state or the United States with respect to land conservation and development within this state." *See* ORS 197.045(4) and 197.090(4).

We do not accept the argument that the legislature intended to grant such a significant power to the Department by such general terms. When the legislature chose to authorize the Department to adopt statewide goals and to review local comprehensive plans, it expressed that intent clearly. Had it also intended to allow the Department to police local implementation of comprehensive plans once they have been acknowledged, we believe it would have so provided with equal clarity.

The statutory provision authorizing the director to "represent this state before any agency of this state * * *" can be explained without assuming that it refers to the Department's right to appear before LUBA to contest local land use decisions. Both the Department's director and LCDC are authorized to deal with other agencies of this state. The director has a duty to be administrative head of the Department and to coordinate the Department's activities with federal and state agencies, cities, counties and special districts. *See generally,* ORS 197.090. LCDC, which directs the performance of the director, must cooperate

with agencies of this and other states and coordinate planning efforts of state agencies. ORS 197.040(c) and (f). LCDC is empowered to apply for and receive monies from any agency or department of this state. ORS 197.045(1). It can also contract with any public agency. ORS 197.045(2). Thus, the Department is authorized to deal with other state agencies for several different purposes. It was therefore appropriate for the legislature to authorize the director to represent the Department before those agencies. Because the provision can be explained generally, we do not believe it was intended for the very specific purpose of authorizing the Department to contest local land use decisions before LUBA.

Finally, the Department argues that we must assume a legislative intent to authorize it to contest local applications of acknowledged comprehensive plans in order to render the statutory scheme reasonable. To conclude that it was not so authorized, the Department argues, "would allow a local government unilaterally to render the statutory scheme ineffective."

This argument presumes that the Department is the only potential challenger of local decisions based on acknowledged comprehensive plans. That is not the case. The legislature designated several entities that, if substantially affected or aggrieved, are entitled to contest such local decisions. *See* Or Laws 1979, ch 772, § 4(2) and (3). Arguably, vesting such authority in the Department might lead to more consistent regulation of local land use decisions.[21] The relevant inquiry here, however, is not which of several policy choices would be best; that is for the legislature to decide. It is sufficient for our purposes that our reading the statutes as we have does not render the statutory scheme unreasonable. Because the legislature provided

---

[21] Good reasons can be postulated both for authorizing and for choosing not to authorize the Department to contest local decisions. Granting such authority to the Department might arguably result in closer, more constant regulation of local government decisions. Private individuals and groups might be reluctant to expend the money and time to contest many questionable decisions, whereas the Department could routinely review such decisions. On the other hand, granting such authority to the Department would involve a substantial involvement by a state agency in an area of land use regulation that the legislature has generally deemed local in nature. *See* ORS 197.005(3).

for other individuals and groups to have standing to contest local land use decisions, construing the statutes as not granting standing to the Department preserves a reasonable statutory scheme.

The Department greatly understates the extent of control it was given over local government action. It helps formulate the statewide goals. It, through LCDC, decides whether or not a given comprehensive plan is in compliance with the statewide goals. If it becomes dissatisfied with the course of local decisions, it can initiate a revision of the statewide goals. With legislative approval, it can obtain designation of areas of critical state concern and closely monitor the use of those areas. ORS 197.405. We hold that the land use statutory scheme did not authorize the Department, either expressly or by implication, to contest individual decisions of local governments applying acknowledged comprehensive plans.[22]

Reversed and remanded with instructions to dismiss.

---

[22] Because of the disposition we make of this case, we are not required to reach petitioner's other assignments of error.