Argued and submitted April 29, 2009; on appeal, order arresting judgment on Count 1 reversed and remanded for reinstatement of conviction for aggravated murder; on cross-appeal, judgment on convictions for attempted aggravated murder on Counts 2, 3, and 4 reversed and remanded with instructions to enter a single conviction reflecting defendant's conviction on all three theories; case remanded for resentencing; otherwise affirmed March 10, 2010 .

## STATE OF OREGON,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

## SATYA KRISHNA DASA,
*Defendant-Respondent*
*Cross-Appellant.*

Multnomah County Circuit Court
031236658; A133296

227 P3d 228

David B. Thompson, Senior Assistant Attorney General, argued the cause for appellant-cross-respondent. On the opening brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Senior Assistant Attorney General. With him on the answering brief were John R. Kroger, Attorney General, and Rolf C. Moan, Acting Solicitor General.

Meredith Allen, Deputy Public Defender, argued the cause for respondent-cross-appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services. Satya Krishna Dasa filed the supplemental brief *pro se*.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals the trial court's order granting defendant's motion in arrest of judgment for a single count of aggravated murder and resulting in entry of a judgment of conviction for murder rather than aggravated murder. ORS 138.060(1)(b) (allowing the state to appeal "[a]n order arresting the judgment"). Defendant cross-appeals the judgment, raising 20 assignments of error. ORS 138.040 (allowing defendant to appeal a judgment). We write to address (1) the interrelated assignments of error on appeal and cross-appeal that concern whether, as a matter of law, defendant could be convicted of aggravated felony murder based on the state's theory that he entered a dwelling with the intent of murdering the victim and then personally and intentionally murdered him; and (2) defendant's assignment of error on cross-appeal concerning the trial court's failure to merge defendant's attempted aggravated murder convictions. We reject all remaining assignments of error on cross-appeal without discussion. As explained below, we conclude that, as a matter of law, defendant could be convicted of aggravated murder based on the state's theory and that the trial court erred in failing to merge defendant's convictions for attempted aggravated murder. Accordingly, we reverse in part and affirm in part.

■ The issues on appeal are legal in nature. Consequently, we state only the material facts that are necessary to provide context. Because the jury found defendant guilty, we state those facts in the light most favorable to the state. *State v. Maxwell*, 165 Or App 467, 469, 998 P2d 680 (2000), *rev den*, 334 Or 632 (2002).

After defendant's wife entered into an intimate relationship with Bukshin, defendant indicated to others that he was going to kill Bukshin. In late December 2003, defendant entered Bukshin's home with the intent to murder him. Defendant then stabbed Bukshin, who died from blood loss. Defendant also repeatedly stabbed Bukshin's estranged wife, Webster, who was also in the house that night. Webster survived.

Based on those events, defendant was charged with aggravated murder for the death of Bukshin (Count 1), ORS 163.095. Specifically, the indictment alleged:

### "Count 1

### "AGGRAVATED MURDER

"The said Defendant(s), **SATYA KRISHNA DASA**, on or about December 20, 2003, in the county of Multnomah, State of Oregon, did unlawfully and intentionally and knowingly commit the crime of Burglary in the First Degree and in the course of and in furtherance of the crime the defendant was committing, defendant personally and intentionally caused the death of **YURI BUKSHIN**, a human being, who was not a participant in the crime, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"

(Boldface and uppercase in original.) Defendant was also charged with (a) the attempted aggravated murder of Webster (Counts 2, 3, and 4), ORS 161.405; (b) first-degree burglary (Counts 5 and 6), ORS 164.225; and (c) the first-degree assault of Webster (Count 7), ORS 163.185.

At trial, at the close of the state's case-in-chief, defendant requested that the court compel the state to elect the factual theory underlying the aggravated murder charge in Count 1. The state responded that, because defendant committed first-degree burglary by entering Bukshin's home with the intent to commit his murder, defendant could also be convicted of aggravated felony murder.

Thereafter, defendant moved for a judgment of acquittal on Count 1. Defendant's motion was premised on his contention that the state's theory failed as a matter of law. More specifically, defendant contended that a burglary committed with the intent to murder could not support an aggravated felony murder conviction for two interrelated reasons. First, defendant contended, the murder did not occur in furtherance of the burglary. Second, defendant asserted that the state could not " 'bootstrap[ ]' an aggravating factor on to what would otherwise be a plain intentional murder

charge"—that is, the state could not rely on the intent to commit murder to prove both that defendant committed the burglary and that he killed Bukshin personally and intentionally. Defendant noted that, because "Count 1 was not demurrable" and because "facially [the indictment is] not defective," a motion for judgment of acquittal (MJOA) was the "first legal opportunity" after the state elected its factual theory for him to assert that the state's theory failed as a matter of law. The trial court reserved ruling on the MJOA.

At the close of defendant's case, and again after the state's rebuttal case, defendant renewed his MJOA on Count 1. The trial court denied the motion. The court noted that "this is really an attack on the sufficiency of the indictment" and told defendant that it was "going to allow [him] to re-raise the issue as a motion in arrest of judgment." At that point, albeit prematurely, the trial court allowed the parties to make their respective arguments concerning the merits of a motion for arrest of judgment.

Defendant's position remained constant—that is, he asserted that, as a matter of law, a burglary committed with the intent to murder could not support an aggravated felony murder conviction for either, or both, of two reasons: *First*, because felony murder requires that a death occur in the course of and *in furtherance of* the burglary, a murder cannot be in furtherance of the burglary unless the burglary is committed with an intent to commit a crime other than murder (*e.g.*, theft). *Second*, the state cannot use defendant's "intent to commit murder" to prove an element of burglary (*i.e.*, that he entered Bukshin's home with the intent to murder him) as well as the element that elevates the felony murder to aggravated felony murder (*i.e.*, that he personally and intentionally committed the murder).

The state disagreed, contending that the text of the four pertinent statutes[1]—*viz.*, ORS 164.215 (burglary); ORS 164.225 (first-degree burglary); ORS 163.115(1)(b)(C) (felony murder); and ORS 163.095 (aggravated murder)—collectively and unambiguously demonstrate the following:

---

[1] The text of those statutes is set out below. *See* 234 Or App at 228.

"Aggravated murder includes felony murder, and felony murder includes a killing committed in the course and in furtherance of a first degree burglary. Murder is obviously a crime, so entering someone's home with the intent to murder is first degree burglary."

The state also invoked *State v. Reams*, 292 Or 1, 636 P2d 913 (1981), in support of its position that an aggravated felony murder conviction can be based on a burglary with intent to kill a victim, coupled with the subsequent personal and intentional murder of that victim. Further, in that regard, the state asserted that, when the 1971 Legislative Assembly amended the felony murder statute, it did so with the intent of "*codify[ing] existing case law*" that established that "felony murder applied to killings committed during burglaries where the intent of the defendant upon entering the home was to commit assault or murder." (Emphasis in original.)

After the jury convicted defendant of aggravated murder (Count 1), as well as attempted aggravated murder (Counts 2, 3, and 4), first-degree burglary (Counts 5 and 6), and first-degree assault (Count 7), defendant filed a motion in arrest of judgment in which he asserted, as pertinent to this appeal, that the facts stated in Count 1 of the indictment did not constitute an offense. In their colloquy with the court, the parties essentially reiterated their arguments and discussed case law from various states addressing that legal issue.

The court granted defendant's motion, reasoning that

"the statutory scheme in Oregon does not allow for this particular theory presented by the State of aggravated murder, that every state that has dealt with this very issue with the same statutory framework of Oregon has ruled the same, they've ruled against the State. I realize there's only four states, but there's only a certain number of states that have a parallel statute to ours, but the states that have dealt with this in the capital arena have ruled one of two ways. They've ruled either that the 'in furtherance' language prohibits the State from charging intentional murder in furtherance of the crime of burglary with the intent to commit the very same murder, or they've ruled that you cannot in a

capital case have an intentional murder and aggravate it with the intent to murder as part of the burglary, that it has to be some other intent, such as a burglary with intent to rob, to commit theft, to commit rape, but it can't be the same intent as the intent to murder.

"I agree that, quite frankly, some of those states gave it very little thought in their opinion. I think California and New York ha[ve] given it more analysis, and I am mindful of the fact that we've relied on the New York cases when dealing in [*Reams*] with our felony murder statute. New York did go on to distinguish felony murder analysis from capital murder analysis in [*People*] v. *Cahill*[, 2 NY3d 14, 809 NE2d 561 (2003),] in a very lengthy, well-crafted opinion.

"* * * I don't see any reason why Oregon would not follow the same analysis.

"* * * * *

"Because of that, * * * I am entering a conviction on Count 1 in Aggravated Murder to the lesser included offense of Intentional Murder."

The state appeals, assigning error to the trial court's allowance of defendant's motion for arrest of judgment on Count 1. Defendant cross-appeals the judgment of conviction, raising 20 assignments of error concerning, among other things, (1) the denial of his MJOA on Count 1, the aggravated murder count, and (2) the court's entry of separate convictions on the three counts that alleged different theories of the attempted aggravated murder of Webster.

Because they are inextricably interrelated, we begin by addressing the state's sole assignment of error on appeal—*viz.*, the court erred in arresting judgment on Count 1 and in entering judgment for the offense of murder—and defendant's first assignment of error on cross-appeal, which challenges the trial court's denial of defendant's MJOA on Count 1. In addressing the common, substantive core of those assignments, the state contends that, as a matter of law, defendant may be convicted of aggravated felony murder. Specifically, the state asserts that,

"[i]n this case, the state charged, and the jury found, that defendant had committed aggravated felony murder

by killing the victim in the course of and in furtherance of the crime of first-degree burglary. The state's theory of burglary was that defendant unlawfully entered the victim's home with the intent to commit his murder. Defendant argued that a burglary committed with the intent to murder could not support a conviction for aggravated felony murder, either because the killing did not occur 'in furtherance' of the burglary, or because the state could not rely on the same intent to prove both that defendant killed the victim personally and intentionally and that he committed a burglary. The trial court agreed with one or both of those theories, granting defendant's motion in arrest of judgment and entering a conviction on count 1 for murder, rather than aggravated felony murder.

"That ruling, and the court's subsequent judgment of conviction and sentence for murder on count 1, were erroneous. The unambiguous text and context of the relevant statutes establish that burglary in the first degree is one of the predicate offenses on which a charge of felony murder or aggravated felony murder may be based. The legislature did not create an exception for murders committed in the course of and furtherance of burglary in the first degree if the intended crime was the murder of the same victim, and this court is not free to do so. A crime committed inside a residence to accomplish the goal of a burglary is always done 'in furtherance of' the burglary, and a murder committed to accomplish the victim's death is no different. Defendant's burglary of the victim's residence and his murder of the victim are wholly distinct criminal acts, and it is not impermissible 'bootstrapping' to rely on the burglary to establish the underlying or predicate felony for an aggravated felony-murder charge."

Defendant disagrees. According to defendant,

"[i]n order to convict a defendant of felony murder, the state must prove that defendant committed the homicide 'in the course of and in furtherance of' the underlying felony. Here, defendant committed burglary when he entered a dwelling with the intent to commit murder. He fulfilled that intent when he killed his intended victim. Defendant committed burglary 'in the course of' committing homicide, but he did not commit homicide '*in furtherance of*' the burglary, because the homicide did not further the burglary; rather, the burglary furthered the homicide. For the homicide to be

in furtherance of the burglary, the burglary must have an independent objective that the murder facilitates."

(Citation omitted; emphasis in original.) Further, defendant contends:

"A person commits aggravated felony murder if he 'personally and intentionally' commits a homicide in the course of and in furtherance of a felony. Under the state's theory, the defendant's intent to commit the homicide fulfills the intent element of the felony underlying the murder and the intent that aggravates the felony murder to aggravated murder. The use of the same element is impermissible bootstrapping. *See People v. Cahill*, 2 NY3d 14, 62, 809 NE2d 561, 777 NYS2d 332 (2003) (defendant who committed burglary with the intent to commit murder and then fulfilled that intent by committing intentional murder could not be convicted of capital felony murder 'because the burglary carried no intent other than to commit murder'). Defendant cannot be convicted of aggravated felony murder."

(Some citations omitted.)

The parties' assignments of error and their arguments on appeal raise a single, overarching legal issue that we must resolve: As a matter of law, does a defendant commit aggravated felony murder by entering a dwelling with the intent of murdering a particular person and then personally and intentionally murdering that person?[2] In turn, that overarching issue implicates two subsidiary issues: (1) Does a defendant commit felony murder pursuant to ORS 163.115(1)(b)(C) by killing a particular person after entering a dwelling with the intent to kill that person? (2) If so, is the intent to murder that underlies the burglary under those circumstances the same as the intent required to prove that the defendant committed the murder "personally and intentionally" as required by ORS 163.095(2)(d)?

---

[2] Given our analysis and disposition, we need not decide whether that legal challenge was more properly resolved by way of an MJOA or a motion in arrest of judgment, because defendant was not entitled to either. In all events, the parties identify no practical difference in the relief that would have accrued to defendant if the trial court had granted defendant's MJOA on Count 1 instead of arresting judgment on that count and entering conviction for the offense of intentional murder.

Before turning to the first of those subsidiary issues, we begin with an overview of the pertinent statutes. Three are salient.

*First*, ORS 163.115(1)(b) provides, in part, that criminal homicide[3] constitutes murder

"[w]hen it is committed by a person * * * who commits * * * any of the following crimes *and in the course of and in furtherance of the crime the person is committing* * * * the person * * * causes the death of a person other than one of the participants:

"* * * * *

"(C)   Burglary in the first degree as defined in ORS 164.225[.]"

(Emphasis added.)

*Second*, a person commits first-degree burglary as defined in ORS 164.225 when the person (1) "enters or remains unlawfully in a building with intent to commit a crime therein[,]" ORS 164.215(1), and (2) "the building is a dwelling," ORS 164.225(1). A " '[d]welling' means a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present." ORS 164.205(2).

Finally, ORS 163.095 defines "aggravated murder" to include

"murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2)   * * *

"* * * * *

"(d)   Notwithstanding ORS 163.115(1)(b), *the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b)."*

(Emphasis added.)

---

[3] "A person commits criminal homicide if, without justification or excuse, the person intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being." ORS 163.005(1).

■　　　Against that statutory backdrop, we consider whether a defendant commits felony murder pursuant to ORS 163.115(1)(b)(C) by killing a particular person after entering a dwelling with the intent to kill that person. Defendant's position to the contrary rests on the following stark syllogism:

> (a)　Felony murder occurs only when the death is caused "in the course of and in furtherance of" the predicate felony. ORS 163.115(1)(b).

> (b)　Here, defendant committed burglary "in furtherance of" an effort to murder Bukshin, not the other way around— that is, the homicide did not further the burglary; rather, the burglary furthered the homicide.

> (c)　Consequently, defendant did not commit felony murder.

The success of that syllogism depends on the meaning of "in furtherance of," as used in ORS 163.115(1)(b). In construing that wording, we begin by "examin[ing] the text and context of the statute and then proceed to any relevant legislative history that the parties have offered, giving that history such weight, if any, as it appears to merit." *State v. Bailey*, 346 Or 551, 556, 213 P3d 1240 (2009); *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (describing statutory interpretation paradigm); *see also State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (modifying *PGE*'s statutory interpretation paradigm in light of subsequent amendments to ORS 174.020).

■■　　　Our analysis of the text and context also includes examination of prior case law. *State v. McDonnell*, 343 Or 557, 563, 176 P3d 1236 (2007), *cert den*, ___ US ___ , 129 S Ct 235 (2008). Further, to the extent that the Supreme Court has interpreted a statute, its "interpretation becomes a part of the statute as if written into it at the time of its enactment." *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992).

As noted, ORS 163.115(1)(b) requires, as pertinent here, that Bukshin's death have occurred "in furtherance of" the burglary. "Furtherance" is defined as "a helping forward

: ADVANCEMENT, PROMOTION." *Webster's Third New Int'l Dictionary* 924 (unabridged ed 2002).

Based on that definition, the state contends that "a first-degree burglary occurs where there is (1) an unlawful entry into a dwelling, coupled with (b) the intent to commit a crime inside." Consequently, the state asserts—and contrary to defendant's premise—"actually committing the intended crime (in this case murder) 'furthers' the burglary by actually acting on the unlawful intent that propelled the unlawful entry." Moreover, the state asserts that, in defining felony murder in ORS 163.115(1)(b)(C), the legislature did not expressly exclude a subset of burglaries—that is, those committed with an intent to murder—from the burglaries that may serve as the basis of a felony murder conviction. *See* ORS 174.010 (a court may not "insert what has been omitted").

Defendant remonstrates that the state's construction inverts the common understanding of "in furtherance of." In that regard, defendant asserts that a murder can be "in furtherance of" a burglary only if the burglary has "an independent objective [(*e.g.*, theft)] that the murder facilitates." As support for that understanding, defendant points to aspects of the analysis in *State v. Branch*, 244 Or 97, 415 P2d 766 (1966), which we assess in detail below, and authority from other jurisdictions.[4]

■ As an abstract semantic proposition, each party's interpretation is, at least, plausible. A burglary could be understood to be "in furtherance" of the murder of an inhabitant, rather than vice versa. Conversely, if the ultimate objective of the burglary is to murder the inhabitant, every action up to and including the achievement of that purpose could be understood to be in furtherance of the burglary. As we have previously explained, "the threshold of ambiguity is a low one. It does not require that competing constructions be

---

[4] *See, e.g., Parker v. State*, 292 Ark 421, 427, 731 SW2d 756, 759 (1987) ("For the phrase 'in the course of and in furtherance of the felony' to have any meaning, the burglary must have an independent objective which the murder facilitates. In this instance, the burglary and murder have the same objective. That objective, the intent to kill, is what makes the underlying act of entry into the home a burglary. The burglary was actually no more than one step toward the commission of the murder and was not to facilitate the murder.").

equally tenable. It requires only that a competing construction not be 'wholly implausible.' " *Godfrey v. Fred Meyer Stores*, 202 Or App 673, 686, 124 P3d 621 (2005), *rev den*, 340 Or 672 (2006).

Accordingly, we proceed to an examination of pertinent legislative history. The substance of what is now ORS 163.115(1)(b) was enacted in 1971 as part of a comprehensive revision of the Oregon Criminal Code. *See* Or Laws 1971, ch 743, § 88. Two aspects of the legislative history are most pertinent to our inquiry. *First*, there does not appear to have been any discussion of the meaning of, or derivation of, the "in the furtherance of" wording in the present version of ORS 163.115(1)(b), which had no referent in Oregon's antecedent statutes.

*Second*, although the 1971 revisions effected two very significant changes to the felony-murder rule—neither of which is germane to this case[5]—the minutes from a Senate committee reiterated that "[t]he felony-murder doctrine (a killing arising in the course of committing certain very violent felonies) *is present law and is continued under the proposal.*" Minutes, Senate Criminal Law and Procedure Committee, Feb 16, 1971, 7 (emphasis added); *see State v. Blair*, 230 Or App 36, 52, 214 P3d 47, *rev allowed*, 347 Or 348 (2009) (reiterating history concerning changes to the felony

---

[5] The commentary summarizes those changes:

"The draft section follows the modern trend away from the common law felony-murder rule pursuant to which almost any killing occurring during the commission of some other felony renders all participants in the underlying crime guilty also of murder. This has had some highly questionable results in cases where a co-felon had no idea that force would be used or where the death is that of a co-felon slain by police or the victim.

"The draft extends a defense to the felony-murder doctrine in what constitutes a novel change. * * *

"* * * * *

"The proposed draft also erases the felony-murder provision found in [*former*] ORS 163.020(1) [(1969), *repealed by* Or Laws 1971, ch 743, § 432], which provides that death resulting from the commission of any felony, other than those described in the first degree murder statute, is second degree murder. Several other states presently have a provision similar to Oregon's, but all recent criminal codes have deleted it."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 88, 87 (July 1970).

murder rule). Thus, the 1971 revision was intended to incorporate prior Oregon felony murder law except as expressly altered.

Even more particularly, except as specifically noted in the commentary, the legislative changes to the wording of the felony murder statute, which included the addition of the "in furtherance of" wording, were not intended to alter pre-existing Oregon case law concerning the use of burglary as a predicate crime for a felony murder conviction. *See Reams*, 292 Or at 8 (preceding from premise, in applying ORS 163.115(1)(b), that, to the extent that the legislature decided to include burglary as one of the crimes that would serve as the predicate crime for a felony murder conviction, the legislature "at the time of the addition of the new Criminal Code, was aware of the existing law in Oregon on this subject, as set forth in [three cases], all decided prior to the adoption of that Code").

In sum, as the Supreme Court held in *Reams*, the legislature incorporated preexisting law, as announced in three decisions: *State v. Morris*, 241 Or 253, 405 P2d 369 (1965); *Branch*, 244 Or 97; and *State v. Tremblay*, 4 Or App 512, 479 P2d 507, *rev den* (1971). Consequently, those cases define the baseline of legislative intent with respect to whether defendant's conduct in this case satisfied the requisites of ORS 163.115(1)(b)(C).

In deconstructing those decisions, it is essential to remember that, at the time they were decided, Oregon law provided for two degrees of felony murder. As pertinent here, first-degree murder included a killing committed in the commission of a felony enumerated in the statute.[6] Second-degree murder, on the other hand, included a death that occurred during the commission of any other felony.[7] That distinction between first- and second-degree felony murder is ultimately decisive.

---

[6] *See, e.g., former* ORS 163.010(1) (1969), *repealed by* Or Laws 1971, ch 743, § 432 ("Any person who purposely, and of deliberate and premeditated malice, or in the commission of or attempt to commit rape, arson, robbery or burglary, kills another, is guilty of murder in the first degree.").

[7] *See, e.g., former* ORS 163.020 (1969), *repealed by* Or Laws 1971, ch 743, § 432 ("Any person who kills another purposely and maliciously but without deliberation and premeditation, or in the commission or attempt to commit any felony other than rape, arson, robbery or burglary, is guilty of murder in the second degree.").

In *Morris*, a case involving first-degree felony murder, the defendant entered the house where his estranged wife was living with her companion, Libby, with the intent to kill them both. 241 Or at 254-55. The defendant ultimately killed Libby. *Id.* at 255. The defendant assigned error to the trial court's felony-murder instruction in which the court stated that, if Libby's killing occurred in the commission of a burglary, proof of the burglary would equate with proof of premeditation and deliberation so as to constitute first-degree murder. *Id.* The defendant contended that he had not committed burglary and that the instruction denied him the benefit of his defense theory that the killing was an act of passion that occurred without premeditation. *Id.*

The Supreme Court rejected those contentions:

"The jury was free to believe the defendant's story if it wanted to. If, however, it chose to believe the state's witnesses, there was ample evidence that a burglary was being committed. *The burglary may have been incidental to the defendant's primary purpose, which was to kill his wife and her companion, but the state was not bound to ignore the burglary.* The district attorney had the right to try to prove an objective fact, burglary, in addition to a subjective one, the state of the defendant's mind."

*Morris*, 241 Or at 255 (emphasis added).

A year later, the Supreme Court decided *Branch*, a case involving second-degree felony murder. In *Branch*, the defendant shot and killed Poole as he was getting out of an automobile that was double-parked next to the defendant's. 244 Or at 98. The trial court instructed the jury, in part, that, " 'under our law, a killing which is committed by a defendant during the commission of or attempt to commit the crime of assault with a dangerous weapon is also second degree murder.' " *Id.* at 99. On review, the state contended that the predicate felony that underlies a felony murder "need not be a collateral one, but that any included felony, such as an aggravated assault, is a sufficient felony to entitle the state to an instruction on felony murder under [*former*] ORS 163.020." *Id.* at 100.

The Supreme Court disagreed with the state's contention, adopting the so-called "merger exception" *in the context of second-degree felony murder.*[8] The court reasoned:

> "In order to preserve the distinctions between the degrees of murder and manslaughter, courts in other states have held that where the only felony committed (apart from the murder itself) was the assault upon the victim which resulted in the death of the victim, the assault merged with the killing and could not be relied upon by the state as an ingredient of a 'felony murder.' "

*Branch*, 244 Or at 100.

Thereafter, we considered in *Tremblay* whether to extend the Supreme Court's holding in *Branch* and apply the merger exception in the context of *first-degree* felony murder. In *Tremblay*, the defendant entered the victim's dwelling to assault him. 4 Or App at 514-17. The trial court instructed the jury that the defendant could be convicted of first-degree murder if the defendant or one of her accomplices caused the victim's death during the commission of a burglary. *Id.* at 516-17. The defendant contended that a burglary with the intent to assault the victim merged with the killing, just as the assault had merged with the killing in *Branch*. *Tremblay*, 4 Or App at 517.

We rejected that contention and, relying on the Supreme Court's decision in *Morris*, declined the invitation to extend the merger exception adopted with respect to second-degree felony murder in *Branch* and apply it to first-degree felony murder. *Tremblay*, 4 Or App at 517-19, 518 n 2. We reasoned:

> "In *Branch* the only other crime was the assault itself. Burglary consists of two things—one, breaking and entering a dwelling house; two, intent to commit a crime therein. The crime which a burglar usually intends to commit after he breaks into a dwelling is larceny. Defendant concedes her argument could not apply in that situation. We think her argument fails because it is obvious that the legislature

---

[8] The "merger exception" is a "popular restriction of the [felony murder] rule" that "precludes certain offenses from serving as the predicate felony." Mitchell Keiter, *Ireland at Forty: How to Rescue the Felony-Murder Rule's Merger Limitation from Its Midlife Crisis*, 36 W St U L Rev 1, 2 (2008).

intended [by including burglary as a predicate felony for purposes of first-degree felony murder] to give added protection to persons who are within a dwelling place. This is borne out by the decision in * * * *Morris* * * *, which was decided nine months before * * * *Branch* * * *. * * *

"* * * * *

"The same justice wrote the opinions in *Morris* and *Branch*. *Morris* was not cited in *Branch*. If *Branch* was intended to overrule *Morris* we assume it would have done so specifically."

*Tremblay*, 4 Or App at 517-19.

In sum, *Morris*, *Branch*, and *Tremblay*—the three decisions that the legislature intended to ratify in 1971—embodied two distinct and analytically consistent holdings. First, as in *Branch*, the merger exception applied solely in the context of a second-degree felony murder case, *i.e.*, when a killing occurred during the commission of a felony not enumerated in *former* ORS 163.020. Second, *Morris* and *Tremblay* explicitly held that a felony murder conviction is appropriate where—as here—a defendant commits burglary with the intent to assault or kill a particular person and then assaults or kills that person.

With that understanding, we return to *Reams*, a case that was decided after the 1971 Criminal Code revisions and in which the Supreme Court interpreted a substantively similar version of ORS 163.115(1)(b). In that case, the court reaffirmed the preexisting case law that ultimately served as the basis for its decision.

The defendant in *Reams* entered his in-laws' home, searching for his estranged wife. 292 Or at 3-4. The testimony would have allowed the jury to "properly find that when defendant unlawfully entered the house of [his in-laws] he did so with the intent to assault his wife, but not to either assault or kill either of her parents[.]" *Id.* at 4.

As pertinent in *Reams*, felony murder was defined by ORS 163.115(1)(b) (1979) to include the conduct of an individual who

"commits or attempts to commit * * * burglary in the first degree * * * and in the course of and in furtherance of the

crime he is committing * * *, he, or another participant if there be any, causes the death of a person other than one of the participants[.]"

Further, first-degree burglary was defined to include an entry into a dwelling with the intent to commit a crime such as assault. ORS 164.215 (1979); ORS 164.225 (1979).

In that statutory context, the Supreme Court identified the issue before it as "whether a defendant can be properly indicted and convicted for felony murder when the underlying felony is a burglary in which the crime which defendant is alleged to have intended to commit after his unlawful entry was the crime of assault." *Reams*, 292 Or at 3. In resolving that issue, the court canvassed *Morris, Branch,* and *Tremblay*.[9] The court then examined the legislative history that led to the enactment of ORS 163.115(1)(b). Based on that history, the court in *Reams* concluded that

"one of the effects of the felony murder provision of the new Criminal Code was to omit as collateral felonies crimes other than those considered to be 'more violent and potentially dangerous.' Burglary in the first degree, however, was considered to be such a felony. With respect to the legislature's decision to include burglary among 'the more violent and potentially dangerous felonies,' we must assume that the legislature, at the time of the addition of the new Criminal Code, was aware of the existing law in Oregon on this subject, as set forth in *Morris, Branch,* and *Tremblay,* all decided prior to the adoption of that Code."

292 Or at 8 (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 88, 85 (July 1970)).

Thus, the Supreme Court in *Reams* understood that the 1971 legislature, in enacting ORS 163.115, had (1) eliminated second-degree felony murder; but (2) retained what had been first-degree felony murder—that is, a killing that occurred in the course of particular enumerated felonies.

[9] Strikingly, the Supreme Court noted that the case before it was similar to *Tremblay*—that is, the case in which we refused to apply the merger exception in the context of a first-degree felony murder case in which the defendant committed burglary with intent to assault the victim who was then killed. *Reams*, 292 Or at 7, 14.

Further, in retaining the functional equivalent of first-degree felony murder, the legislature was aware that, under *Morris* and *Tremblay*, a defendant could be convicted of felony murder if the defendant committed burglary based on the intent to assault or kill a particular person and then, in fact, assaulted or killed that person. Given that understanding, the Supreme Court concluded:

> "Upon examination of the provisions of the felony murder statute (ORS 163.115(1)(b)) and the first degree burglary statutes (ORS 164.225 and 164.215), we believe that the intention of the legislature in the adoption of these statutes in 1971 is expressed by the clear and unambiguous terms of these statutes to the effect that *a person who commits burglary in the first degree and who in the course of that crime causes the death of another person not a participant in the crime, as in this case, is guilty of criminal homicide (i.e., felony murder) and that a person who, as in this case, enters a dwelling unlawfully with a gun with the intent to commit an assault on some person who may be in that house is guilty of burglary in the first degree.* It follows, in our opinion, that this court is not at liberty to consider what the legislature might have intended or provided on the assumption that it did not consider the problems now raised by this defendant, much less to construe the terms of this statute so as to avoid problems which it may or may not have considered at the time of its adoption of these statutes in 1971."

*Reams*, 292 Or at 11 (emphasis added); *see Stephens*, 314 Or at 350 n 6 (Supreme Court's "interpretation [of a statute] becomes a part of the statute as if written into it at the time of its enactment").

We fully appreciate, as defendant emphasizes, that the circumstances in *Reams* were distinguishable from those presented here. In *Reams*, the defendant unlawfully entered with the intent to assault one person and killed another; here, defendant unlawfully entered with the intent to kill a particular person and actually killed that person.[10] Further,

---

[10] Indeed, a special concurrence in *Reams* emphasized that distinction:

"I concur in the majority decision that the defendant was lawfully convicted of felony murder but that the defendant must be resentenced. I write specially for the reason that I am of the opinion that the defendant can be found guilty of felony murder because when the defendant entered he intended to assault A, his wife, and subsequently he killed B, his father-in-law. I express

we are well aware that the Supreme Court in *Reams* did not expressly address the "in furtherance of" requirement in the statute that the parties in this case raise.

■    Nevertheless, *Reams* rests on, and reaffirms, two interrelated premises that are dispositive here. First, the merger exception does not apply to felony murder, as defined in ORS 163.115(1)(b), where a burglary with intent to assault or kill is the predicate felony.[11] Second, and even more particularly, as confirmed by the legislature's awareness of, and consequent ratification of *Morris* and *Tremblay*, that principle applies even when (as here) a defendant committed burglary with an intent to assault or kill a particular person and then kills that same person.

---

no opinion whether the defendant could be found guilty of felony murder if he entered intending to assault A and he subsequently killed A."

292 Or at 18 (Denecke, C. J., specially concurring).

[11] That premise conclusively distinguishes the circumstances of this case from those in *Branch*, on which defendant relies. In *Branch*, as noted, the associated felony (assault against an adult) is not a crime that was identified as a predicate felony in the then-extant version of the first-degree murder statutes or is presently so enumerated in ORS 163.115(1)(b). Conversely, burglary was so identified in *former* ORS 163.010(1) and is so enumerated in ORS 163.115(1)(b)(C).

It was precisely that distinction that led the California Supreme Court, after oral argument in this case, to overrule *People v. Wilson*, 1 Cal 3d 431, 462 P2d 22 (1969), which defendant also invokes. In *Wilson*, the court applied the merger doctrine in the context of first-degree felony murder. However in *People v. Farley*, 46 Cal 4th 1053, 210 P3d 361 (2009), *cert den,* _____ US _____, 130 S Ct 1285 (2010), the court overruled *Wilson*, holding that there was "no ambiguity in the language" of California's first-degree felony murder statute, which "provides that a killing committed in the perpetration of or attempt to perpetrate the enumerated felonies, including burglary, is first degree murder." *Farley*, 46 Cal 4th at 1118, 210 P3d at 409.

In overruling *Wilson*, the court in *Farley* noted that its holding in *Wilson* extending the merger doctrine to first-degree felony murder cases had been the minority rule and that it had been rejected by the Oregon Supreme Court in *Reams. Farley*, 46 Cal 4th at 1117, 1117 n 23, 210 P3d at 408, 408 n 23. The court explained that, "[i]n enacting [the pertinent statute] the Legislature did not limit the definition of burglary, or exclude burglaries based upon an intent to assault. Rather, [the statute] applies the felony-murder rule to *all* burglaries" and that "nothing in the language of [the statute] supports the application of the merger doctrine to its terms." *Id.* at 1118, 1119, 210 P3d at 409 (emphasis in original). Further, the court reasoned that it is the legislature's responsibility to define crimes and fix penalties and that, where the text of a statute is clear, any "[p]olicy concerns regarding the inclusion of burglary in the first degree felony-murder statute remain within the Legislature's domain, and do not authorize this court to limit the plain language of the statute." *Id.* at 1121, 210 P3d at 411.

■ Thus, we conclude that, as a matter of law, defendant could be convicted of felony murder pursuant to ORS 163.115(1)(b)(C) for killing Bukshin after entering a dwelling with the intent to kill him.

■ That conclusion, however, does not end our analysis. Having determined that defendant may be convicted of felony murder, we must address defendant's alternative contention. That contention, as we understand it, is that defendant cannot be convicted of *aggravated* felony murder because proof that defendant entered Bukshin's home with the intent to murder him was used impermissibly for two purposes: (1) to prove that defendant committed burglary and (2) to prove the aggravating factor in ORS 163.095(2)(d), *viz.*, that defendant killed Bukshin "personally and intentionally." Defendant's position fails because it erroneously conflates and equates the intent required to prove burglary with the intent required to prove the "personally and intentionally" aggravating factor in ORS 163.095(2)(d). As we will explain below, those elements are distinct.

■ As previously noted, ORS 163.095 defines aggravated murder to include

"murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2)   * * *

"* * * * *

"(d)   Notwithstanding ORS 163.115(1)(b), the defendant personally and *intentionally* committed the homicide under the circumstances set forth in ORS 163.115(1)(b)."

(Emphasis added.) ORS 163.095(2)(d) manifests the legislature's intention that, when a defendant commits felony murder and, in addition, the defendant commits that murder "personally and intentionally," the defendant can be convicted of *aggravated* murder. In *State v. Ventris*, 337 Or 283, 293, 96 P3d 815 (2004), the Supreme Court explained just that:

> "*Aggravated murder* is defined as 'murder as defined in ORS 163.115, which is committed under, or accompanied by' statutorily defined aggravating circumstances regarding the nature of the crime, the defendant, or the victim(s). In other words, any of the forms of murder under ORS 163.115—intentional murder, felony murder, or murder by abuse—can become aggravated murder when the circumstances of the murder include one or more of the specified additional elements set out in ORS 163.095."

(Footnote omitted; emphasis in original.) Thus, "ORS 163.095(2)(d) and ORS 163.115(1)(b) fit together in a coherent relationship, with the additional finding of the aggravating circumstances transforming felony murder into aggravated murder." *Id.* at 294. One of those aggravating circumstances is a felony murder that is committed "personally and intentionally." ORS 163.095(2)(d).

The operative intent in committing the predicate felony of burglary is functionally and analytically distinct from whether any killing that occurs "in the course of and in furtherance of" that burglary was committed "personally and intentionally." One can enter a victim's home with the intent to murder and yet the ensuing death (the felony murder) may not be caused intentionally.

The following hypothetical is illustrative: A defendant commits burglary by entering a dwelling with the intent to shoot and kill the victim, who is inside. However, on hearing that someone has entered his home, the victim investigates and tackles the defendant. The defendant instinctively pushes the victim away, and the gun accidentally discharges, killing the victim. Under those circumstances, the defendant would be guilty of felony murder because the defendant caused the victim's death in the course of and in furtherance of the burglary but would not be guilty of aggravated felony murder because he did not intentionally commit the actual killing—that is, the death was an accidental consequence of the burglary rather than an intentional act.

In sum, defendant's alternative challenge to his aggravated felony murder conviction proceeds from a false first premise. That conviction was not predicated on some improper "double-dipping" of defendant's operative intent.

Rather, defendant's intent (to kill Bukshin) at the time he unlawfully entered was distinct from his intent in actually committing the murder. Accordingly, the trial court erred in arresting judgment on defendant's conviction for aggravated murder (Count 1) and, necessarily, did not err in denying defendant's MJOA on that count.[12]

■ Finally, we turn to defendant's seventh assignment of error on cross-appeal. In that assignment, defendant contends that the court erred in entering separate convictions on Counts 2, 3, and 4, which alleged three different theories of aggravation concerning the attempted aggravated murder of Webster (*i.e.*, personal and intentional felony murder, concealing the commission of the crime of murder, and concealing the identity of the perpetrator of the crime of murder).

The state concedes that the trial court erred in that regard. We agree and accept the state's concession. *See State v. Barrett*, 331 Or 27, 36, 10 P3d 901 (2000) (reasoning that "[t]he aggravating factors [in ORS 163.095] constitute no more than different theories under which murder becomes subject to the enhanced penalties for aggravated murder"); *State v. Gonzales-Gutierrez*, 216 Or App 97, 109, 171 P3d 384 (2007), *rev den*, 344 Or 194 (2008) (merging the defendant's two convictions for attempted aggravated murder of the

_____

[12] In reaching a contrary conclusion, the trial court referred to *Cahill*. In *Cahill*, the defendant was convicted under a New York statute that elevated *intentional* murder to capital-eligible murder when a defendant intentionally caused the death of a victim in the course of and in furtherance of a burglary. Under those circumstances, the court in *Cahill* held that "the [defendant's] conviction [could not] stand because the burglary carried no intent other than to commit the murder." *Cahill*, 2 NY3d at 62, 809 NE2d at 587. The *Cahill* court acknowledged, however, that the New York statute "could be read differently and conceivably be given the interpretation urged by the prosecution" and that, in its view, "[r]equiring an intent independent of the intentional murder of the victim, as we do, is both the most sensible reading of the statute and the one most consonant with the Legislature's intent in establishing the statute's aggravating factors." *Id.* at 71, 809 NE2d at 594.

*Cahill* is materially distinguishable from this case. Unlike in *Cahill*—and as we have previously explained—the interrelationship between the felony murder statute, ORS 163.115(1)(b), and the aggravated murder statute, ORS 163.095(2)(d), reflects a clear legislative intent to allow defendant to be convicted of aggravated felony murder under the circumstances of this case. That is, ORS 163.095(2)(d) explicitly and unambiguously provides that, where a defendant caused the death of another under circumstances rendering the defendant liable for felony murder and the defendant has so acted "personally and intentionally," the defendant is subject to conviction for aggravated felony murder.

same victim based on different theories into a single conviction). Thus, on remand, the trial court must merge defendant's three convictions for attempted aggravated murder into a single conviction reflecting defendant's conviction on all three theories.

On appeal, order arresting judgment on Count 1 reversed and remanded for reinstatement of conviction for aggravated murder; on cross-appeal, judgment on convictions for attempted aggravated murder on Counts 2, 3, and 4 reversed and remanded with instructions to enter a single conviction reflecting defendant's conviction on all three theories; case remanded for resentencing; otherwise affirmed.